UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSE SANTILLO AVILEZ SORIANO,                    CIVIL ACTION
ET AL.

VERSUS                                           NO: 12-2744

GULF COAST LIFT, LLC ET AL.                      SECTION: R

## ORDER AND REASONS

Plaintiffs Jose Santillo Avilez Soriano, Elvin Ordonez, Odin Mazariegos and Rolando Enrique Ortega Barchona seek leave to amend their complaint to add Charles Johnson, Jamie Hewitt, William Nethery, C&C Concrete and Masonry, LLC ("C&C Concrete"), C and C Concrete and Masonry Rental, LLC ("C and C Rental"), and Nethery Foundation Services, LLC ("Nethery Foundation") as joint employer defendants in this action.  Defendants Gulf Coast Lift, LLC ("Gulf Coast") and Ducky Johnson House Movers, Inc. ("Ducky Johnson") do not oppose the addition of Hewitt, Nethery, C&C Concrete, C and C Rental, or Nethery Foundation (collectively, "Concrete Defendants") as they intend to file third-party demands against these defendants.  They do, however, oppose the addition of Johnson, who is the 100% owner of both Gulf Coast and Ducky Johnson.  For the following reasons, the Court GRANTS plaintiffs' motion in part and DENIES it in part.

## I.   BACKGROUND

Plaintiffs are laborers who allege that they were employed by Gulf Coast and/or Ducky Johnson between March 2010 and August

2012.  They sued Gulf Coast and Ducky Johnson on November 13, 2012, bringing claims under the Fair Labor Standards Act ("FLSA") and Louisiana law.[1]  Plaintiffs claim that Gulf Coast and Ducky Johnson are either the same entity or closely related entities and that their operations were "so intertwined as to be indistinguishable."[2]  Plaintiffs allege that they were paid $100-$110 per day, regardless of the number of hours worked.[3]  They allege that Gulf Coast and/or Ducky Johnson failed to compensate them at the statutory rate of one and a half times their regular rate for hours worked in excess of 40 hours per week.[4]  Plaintiffs also claim that when they worked more than 83 hours per week, Gulf Coast and/or Ducky Johnson failed to pay them the federally-mandated minimum wage of $7.25 per hour.[5]

Gulf Coast and Ducky Johnson filed a motion to dismiss on January 15, 2013.[6]  Plaintiffs amended their complaint on February 5, 2013,[7] and the Court denied the motion to dismiss as moot.[8]  During discovery, plaintiffs learned that the Concrete

---

[1] R. Doc. 1.

[2] R. Doc. 8 at 4.

[3] *Id.* at 5-11.

[4] *Id.*

[5] *Id.*

[6] R. Doc. 5.

[7] R. Doc. 8.

[8] R. Doc. 11.

Defendants may have been acting as their joint employers, as the Concrete Defendants had entered into subcontracts with Gulf Coast and Ducky Johnson during the course of plaintiffs' employment.[9] Gulf Coast and Ducky Johnson indicated to plaintiffs that they would file third-party claims against the Concrete Defendants, and they agreed with plaintiffs that the Concrete Defendants should be added as defendants in this action.[10]

Also during discovery, Gulf Coast represented to plaintiffs that it was not organized until July 2010 and that it did not conduct any business until mid-2011.[11] Similarly, Ducky Johnson indicated to plaintiffs that it is a Florida business corporation, and plaintiffs allege that Ducky Johnson has denied doing business in Louisiana.[12] The proposed amended complaint indicates that Ducky Johnson may never have been authorized to do business in the state.[13] Additionally, after plaintiffs commenced this action, Gulf Coast failed to file required documents with the Louisiana Secretary of State and is no longer in good standing.[14] Plaintiffs speculate in the complaint as to whether Gulf Coast continues to exist as a limited liability

---

[9] R. Doc. 21-1 at 3-4; R. Doc. 24-4 at 8-9.

[10] *Id.*

[11] R. Doc. 21-1 at 7.

[12] R. Doc. 21-1 at 8; R. Doc. 21-2 at 17.

[13] R. Doc. 21-2 at 17.

[14] R. Doc. 21-2 at 2, 17; R. Doc. 21-5.

company, stating that "its current status as a funded and legal entity that can satisfy any debts it incurred is unclear."[15]

Armed with this new information, plaintiffs seek to add Johnson, the 100% owner of Gulf Coast and Ducky Johnson, as a defendant.  The proposed Second Amended Complaint seeks to hold Johnson liable on the following theories: First, plaintiffs wish to add Johnson as a defendant to the existing counts charging overtime pay and minimum wage violations under the FLSA as well as violations of Louisiana's Final Wage Payment Act.[16] Plaintiffs argue in their memorandum—but do not specify in the proposed complaint—that Johnson qualifies as an employer under the FLSA based on his individual oversight of the plaintiffs' work.[17]  Second, plaintiffs add Count IV to the complaint, alleging that Johnson, as the sole owner of Gulf Coast and Ducky Johnson, is individually liable for any violations that may have occurred while Johnson was operating as a sole proprietor under the trade names of Gulf Coast and Ducky Johnson.[18]  Third, the proposed complaint indicates that Gulf Coast is no longer a limited liability company in good standing due to its failure to file a 2013 annual report, and Count IV appears to allege that Johnson is liable for Gulf Coast's violations "to the extent that

---

[15] R. Doc 21-2 at 2, 17.

[16] R. Doc. 21-2 at 13-16.

[17] R. Doc. 21-1 at 5, 11.

[18] R. Doc. 21-2 at 17; *see also* R. Doc. 21-1 at 7-8.

it has been defunded and/or dissolved."[19]  Finally, Count IV
alleges that Gulf Coast and Ducky Johnson are the alter egos of
Johnson and that this Court should pierce the corporate veil and
hold Johnson liable for their conduct.[20]

Gulf Coast and Ducky Johnson oppose the addition of Johnson
as a defendant.  They argue that plaintiffs are not entitled to
amend under Rule 15(a) because of their undue delay in adding
Johnson and because they have not demonstrated that justice
requires it.  As a further basis for denying leave to amend, Gulf
Coast and Ducky Johnson argue that plaintiffs' veil piercing
claim does not arise out of the same transaction, occurrence, or
series of transactions or occurrences as the initial claims in
this action.  Defendants also contend that Louisiana law does not
support plaintiffs' contention that Johnson would be liable for
Gulf Coast's debts if its charter is revoked for failure to file
an annual report.  Finally, defendants argue that the Court
should deny as futile plaintiffs' attempts to amend the complaint
to include their veil piercing theory and their claim that
Johnson acted as an employer within the meaning of the FLSA.

## II.  STANDARD

Leave to amend a complaint is freely given "when justice so
requires." Fed. R. Civ. P. 15(a)(2); *see also High Tech Comm's*

---

[19] R. Doc. 21-2 at 17; *see also* R. Doc. 21-1 at 8-9.

[20] R. Doc. 21-2 at 17-18; *see also* R. Doc. 21-1 at 9-10.

*v. Panasonic Co.*, No. 94-1477, 1995 WL 65133, at *1 (E.D. La. Feb. 15, 1995).  In the context of motions to amend pleadings, references to a court's 'discretion' may be misleading, "because Fed.R.Civ.P. 15(a) 'evinces a bias in favor of granting leave to amend.'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)).  Unless there is a "substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir. 1981)).

In exercising this limited discretion, the Court may consider whether the party seeking leave is doing so after undue delay, in bad faith, or for a dilatory motive. *See Jamieson By & Through Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir. 1985). It is also within the district court's discretion to deny a motion to amend if it is futile.  *Stripling,* 234 F.3d at 872-73. Futility means "that the amended complaint would fail to state a claim upon which relief could be granted." *Id.*  To determine futility, the court "appl[ies] the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.*  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.  *Twombly*, 550 U.S. at 555.

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

Moreover, because plaintiffs seek to add a new defendant, their request is also governed by Rule 20(a).  To determine

whether parties may be properly joined under Rule 20, the Court considers whether "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

## III. DISCUSSION

Other than seeking to name Johnson as a defendant in the existing counts, plaintiffs propose only one additional count against Johnson in their Second Amended Complaint.  It is clear from the allegations in the proposed complaint and in plaintiffs' memoranda, however, that the proposed amendments encompass four different theories of liability, which are listed above.  The Court will examine each of these theories in turn, but first it will address defendants' claim that plaintiffs' request to add Johnson as a defendant is untimely.  Defendants argue that if Johnson indeed "exercised complete control over the plaintiffs . . . had the power to hire and fire Plaintiffs . . . directed them to wear Gulf Coast Lift and/or Ducky Johnson t-shirts . . .[and] was also involved in paying them," then Plaintiffs could and should have named him as a joint employer all along.[21]  It is

---

[21] R. Doc. 24 at 13-14.

apparent, however, that plaintiffs did not name Johnson as a joint employer in the belief that Gulf Coast and Ducky Johnson were valid legal entities in existence and doing business in Louisiana at the time of the alleged FLSA violations.  Defendants do not allege that plaintiffs should have known otherwise when they initially filed suit.

Moreover, defendants do not give any reason why allowing plaintiffs to add Johnson as a defendant will prejudice them. Defendants already agreed to the addition of the five other defendants, and the Court, with defendants' consent, has continued the trial and all pretrial deadlines in this matter to allow the parties time to prepare their claims against the new defendants.  That the addition of Johnson as a defendant is detrimental to *Johnson's* interest in remaining uninvolved in this litigation does not amount to prejudice to Gulf Coast and Ducky Johnson, which are separate legal persons, even if wholly owned by Johnson.

The Court concludes that plaintiffs are entitled under Rule 15 to add these new theories of liability unless defendants can show that the addition of Johnson as a defendant is improper under Rule 20 or that amendment is futile as to one or more of the claims.  With this in mind, the Court turns to plaintiffs' four theories of liability.

**A.   Allegations that Johnson Acted as a Sole Proprietor Under the Trade Names "Gulf Coast Lift" and "Ducky Johnson House Movers"**

Plaintiffs' employment occurred between March 2010 and August 2012.  As discussed above, Gulf Coast represented to plaintiffs that it was not organized as a limited liability company until July 2010 and that it did not conduct any business until mid-2011.  Ducky Johnson indicated to plaintiffs that it is a Florida business corporation, and plaintiffs allege that Ducky Johnson has denied doing business in Louisiana.  In their memorandum, plaintiffs argue that if at any point during their employment, Gulf Coast and Ducky Johnson were not operating as separate, authorized legal entities,

> then the person who is responsible for employing Plaintiffs on these job sites working under the name "Gulf Coast Lift" or "Ducky Johnson" was merely operating as a sole proprietorship under a trade or otherwise assumed name, and therefore, Charlie Johnson, the 100% owner of these corporations, is liable to Plaintiffs for any debts owed to them arising out of unpaid wages or the associated penalties and attorneys fees.[22]

The Court grants plaintiffs' request to amend the complaint with respect to this theory of liability.  Defendants do not argue that this claim is futile.  Moreover, joinder of Johnson as a defendant based on this claim complies with Rule 20, because the original claims against Gulf Coast and Ducky Johnson involve the same transaction or occurrence, and there are common questions of both fact and law.  Because Johnson is properly

---

[22] R. Doc. 21-1 at 8.

joined under Rule 20 based on this claim, plaintiffs are entitled

under Rule 18 to bring as many claims as they have against

Johnson.  *See* Fed. R. Civ. P. 18(a) ("A party asserting a claim .

. . may join, as independent or alternative claims, as many

claims as it has against an opposing party.").  With that in

mind, the Court turns to the remaining three claims.

### B.   Allegations that Johnson is Individually Liable as a Joint Employer

The FLSA defines an employer as "any person acting directly

or indirectly in the interest of an employer in relation to an

employee."  29 U.S.C. § 203(d).  Regulations provide that

multiple individuals or entities may be considered an employee's

joint employers in situations such as:

> (1) Where there is an arrangement between the employers to
> share the employee's services, as, for example, to
> interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in
> the interest of the other employer (or employers) in
> relation to the employee; or
>
> (3) Where the employers are not completely disassociated
> with respect to the employment of a particular employee and
> may be deemed to share control of the employee, directly and
> indirectly, by reason of the fact that one employer
> controls, is controlled by, or is under common control with
> the other employer.

29 C.F.R. § 791.2.  The Fifth Circuit has adopted the "economic

realities test" to determine whether an individual or entity

qualifies as an employer under the FLSA.  Courts consider whether

the putative employer:

> (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). The Court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). When an individual does not exercise actual operational control, merely being an officer or shareholder does not subject the individual to FLSA liability. *Id.* at 355-56. Each of the four elements need not be present in every case, however. *Id.* at 357.

Plaintiffs' proposed Second Amended Complaint now includes Johnson as a joint employer in Counts I and II. As plaintiffs explain in their memorandum seeking leave to amend, Johnson was "on the ground in Louisiana at times," was "directly involved in paying them," and "directed them to wear Gulf Coast Lift and Ducky Johnson t-shirts."[23] Plaintiffs do not include these allegations in the complaint, but they indicate that "defendants," including Johnson, "controlled all aspects of Plaintiffs' work, including times Plaintiffs worked, where they performed their work, the services they performed and the manner in which those services were performed."[24] They allege that

---

[23] R. Doc. 21-1 at 11.

[24] R. Doc. 21-2 at 6.

defendants "had the power to hire and fire Plaintiffs" and that they "paid Plaintiffs in cash, and Plaintiffs were unable to determine which Defendant was paying them at any given time."[25] They further claim that "Defendants issued Plaintiffs T-shirts with the names "Ducky Johnson House Movers, Inc." and "Gulf Coast Lift, LLC" that Plaintiffs were to wear while working on Gulf Coast Lift jobsites."[26]  They also allege that "Defendants' operations were so intertwined as to be indistinguishable."[27]

Defendants argue that amendment is futile with respect to this claim:

> In a blunderbuss manner, Plaintiffs lump Johnson into their overly broad definition of "defendants" and make the same general, formulaic allegations against Johnson, Defendants and Concrete Defendants.  Plaintiffs fail to allege how Johnson, personally, controlled or supervised their alleged employment.  Simply, the allegations relating to Johnson are a recitation of the Fifth Circuit's "economic reality test."[28]

As the Court has indicated, it must address Defendants' futility argument under the standard governing Rule 12(b)(6) motions to dismiss.  Limiting its analysis to the facts alleged in the complaint and accepting them as true for the purposes of this motion, the Court concludes that plaintiffs have stated a claim for relief that is plausible on its face.  The evidence

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] R. Doc. 24 at 19.

ultimately may show that it was the corporate defendants and not Johnson who exercised actual operational control over plaintiffs' employment, and Johnson is free to bring a motion for summary judgment on that basis.  But plaintiffs have made allegations against all defendants, Johnson included, which, if proven as to Johnson, would qualify him as an employer under the FLSA.

Moreover, to the extent that Johnson may have acted as a sole proprietor of Gulf Coast and Ducky Johnson at certain times, this claim overlaps with the claim discussed in subsection A, and plaintiffs are in fact obligated to name Johnson as the joint employer responsible for the alleged violations during that period.  *See* La. Code Civ. Proc. art. 736 ("A person who does business under a trade name is the proper defendant in an action to enforce an obligation created by or arising out of the doing of such business.").  *See also Louisiana Acorn Fair Hous. v. Quarter House*, 952 F. Supp. 352, 355 (E.D. La. 1997) ("Moreover, a trade name is not a separate entity capable of being sued.") (citing *Guidry v. City of Houma,* 471 So. 2d 1056, 1058 (La. Ct. App. 1985)).  Accordingly, plaintiffs are entitled to amend the complaint to include these allegations.

### C.   Allegations that Johnson is Liable for Gulf Coast's Debts if It Was Dissolved or Defunded

Plaintiffs are now aware that Gulf Coast failed to file a 2013 annual report with the Louisiana Secretary of State.

Attached to plaintiffs' memorandum is an exhibit showing the results of a search of Louisiana business filings, which lists Gulf Coast's "Annual Report Status" as "Not In Good Standing for failure to file Annual Report."[29]  The listing also shows Gulf Coast's status as "active," however.[30]  Based solely on this information, plaintiffs speculate in their proposed Second Amended Complaint that Gulf Coast "*may* no longer be in existence as a limited liability company"[31] and argue that "to the extent that Gulf Coast Lift has been liquidated or is otherwise unable to satisfy any judgment rendered against it, Charlie Johnson is the party responsible."[32]  Later, the proposed complaint reiterates that Johnson is responsible for Gulf Coast's debts "to the extent that it has been defunded or dissolved."[33]

Defendants do not squarely address this claim in the section of their memorandum in which they argue the futility of plaintiffs' attempts to amend.  Somewhat confusingly, however, they conclude their timeliness argument with the assertion that Louisiana law precludes shareholder liability when a corporate

---

[29] R. Doc. 21-5.

[30] *Id.*

[31] R. Doc. 21-2 at 2 (emphasis added).

[32] *Id.* at 3.

[33] *Id.* at 17.

15

charter is revoked for failure to file annual reports.[34]  The Court construes this as a futility argument.

A shareholder can in fact be liable for the debts of a limited liability company, *if* it is dissolved by affidavit.  *See* La. Rev. Stat. § 12:1335.1 (stating that shareholders of an LLC dissolved by affidavit "shall be personally liable for any debts or other claims against the limited liability company in proportion to their ownership interest in the company."); *see also Butcher v. Keith Hebert Carpentry/Vinyl Siding, Inc.*, 945 So. 2d 914, 916 (La. Ct. App. 2006) (construing identical statute applying to business corporations and noting that "the statute clearly imposes personal liability on a shareholder or incorporator for the pending claims of corporation once dissolution by affidavit has occurred.").  But plaintiffs do not allege that Gulf Coast has been dissolved by affidavit.  Nor do they allege that its corporate charter has been revoked,[35] or that Johnson has acted to "defund" the company.  Plaintiffs

---

[34] In support of this position, defendants cite *Acadian Cypress & Hardwoods, Inc. v. Piazza*, 664 So. 2d 138 (La. Ct. App. 1995).  In *Acadian*, the Louisiana First Circuit Court of Appeal merely held that when a corporation's charter is reinstated after being revoked for failure to file annual reports, but the corporation was never dissolved, reinstatement is retroactive to the time of revocation, and a shareholder is not responsible for liabilities incurred while the corporation's existence was suspended.

[35] Revocation occurs only after an LLC fails to file an annual report for three consecutive years.  *See* La. Rev. Stat. § 12:1308.2.

16

merely speculate, based solely on Gulf Coast's failure to file an annual report, that one or more of these things could possibly have occurred and argue that in such an event, Johnson would be individually liable.

Plaintiffs may not bring claims based on changes in Gulf Coast's corporate status that have not yet occurred or of which plaintiffs are not actually aware. *See Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortg. Fin. Corp.*, 246 F.3d 1, 9 (1st Cir. 2001) ("[I]t is plaintiff's responsibility to plead factual allegations, *not hypotheticals*.") (emphasis in original) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 629 (1st Cir. 1996)). If the company is not dissolved but its charter is merely revoked, the company remains liable for its debts. *See* La. Rev. Stat. § 12:1308.2 ("Revocation of the articles of organization of a limited liability company pursuant to this Section shall not affect any cause of action against the limited liability company or the right to proceed against any property owned by the limited liability company."). If Johnson has acted to "defund" Gulf Coast in order to render the company judgment-proof, such conduct would not automatically make Johnson responsible for Gulf Coast's debts but would weigh in favor of piercing the corporate veil, which is discussed below.

The Court concludes that amendment is futile as to this theory of liability, because plaintiffs cannot state a claim upon

17

which relief can be granted without alleging that Gulf Coast has been dissolved by affidavit.

### D.    Allegations that Gulf Coast and Ducky Johnson are Alter Egos of Charlie Johnson

The proposed Second Amended Complaint alleges that Gulf Coast Lift and Ducky Johnson "intermingled funds, shared bank accounts and otherwise ignored corporate formalities during the time periods relevant to this litigation and that members of Mr. Johnson's family may have used one or more of these entities' corporate accounts for personal reasons."[36]  In their motion to amend, plaintiffs refer the court to exhibits allegedly showing (1) that Ducky Johnson paid the child support obligations of one of its employees and (2) that Ducky Johnson paid for Gulf Coast's projects and that Gulf Coast paid its income to Ducky Johnson.[37] Plaintiffs would have the Court pierce the corporate veil and hold Johnson liable on the theory that Gulf Coast and Ducky Johnson are merely Johnson's alter egos.

Defendants argue that amendment to include this claim is futile because the allegations fail to state a claim on which relief can be granted.  They argue:

> According to Plaintiffs, limited liability should be lifted if related companies hold a joint company picnic or issue t-shirts to workers at a jobsite.  According to Plaintiffs'

---

[36] R. Doc. 21-2 at 17.

[37] R. Doc. 21-1 at 9-10 (citing R. Docs. 21-6 and 21-7).

theory, a company is the alter ego of its equity security
holder if the company pays the Florida Bureau of Child
Support Enforcement pursuant to a lawful garnishment order
against one of the company's employees.  Plaintiffs would
have the Court pierce the veil for failure to timely file
one annual report.[38]

In evaluating a claim of futility under the standard for
Rule 12(b)(6) motions to dismiss, the Court may not look beyond
the allegations contained in the complaint and any exhibits
attached thereto.  The Court therefore cannot consider
defendants' explanation for the alleged personal use of corporate
funds and must consider only the allegations themselves as they
exist in the proposed complaint.

Because Gulf Coast is a Louisiana limited liability company,
Louisiana law governs the Court's decision on piercing the
corporate veil.  In Louisiana, "[c]orporations function as
distinct legal entities, separate from the individuals who own
them, and their shareholders are not generally liable for the
debts of the corporation." *Hollowell v. Orleans Regional Hosp.
LLC,* 217 F.3d 379, 385 (5th Cir. 2000) (citing *Riggins v. Dixie
Shoring Co.,* 590 So. 2d 1164, 1167 (La. 1991)).  Louisiana law
recognizes exceptions to limited liability, and in certain
circumstances permits piercing the corporate veil on an alter ego
basis.  *Id.*  "This usually involves 'situations where fraud or
deceit has been practiced by the shareholder acting through the
corporation.'"  *Id.*  Alter ego liability need not involve fraud,

---

[38] R. Doc. 24 at 14.

19

however, and courts should consider the totality of the circumstances. *Id.* at 387. When fraud or deceit is absent, "other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one." *Lopez v. TDI Servs., Inc.*, 631 So. 2d 679, 685-86 (La. Ct. App. 1994) (citing *Kingsman Enterprises, Inc. v. Bakerfield Elec. Co.*, 339 So. 2d 1280, 1284 (La. Ct. App. 1976)). According to the Louisiana Supreme Court, relevant factors may include: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings. *Hollowell*, 217 F.3d at 385-86. This list of factors is not exhaustive, however, and courts may consider other factors, such as the use of the companies for non-corporate purposes. *Id.* at 387.

Ducky Johnson is a Florida business corporation, which means Florida law governs the veil-piercing analysis. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 646-47 (5th Cir. 2002) ("[T]he Louisiana Supreme Court would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil."); *NorAm Drilling Co. v. E & PCo Intern., LLC*, No. 48,591-CA, - So. 3d - 2013 WL 6492163, at *4 (La. Ct. App. Dec. 11, 2013) ("Louisiana courts

20

and courts applying Louisiana law apply the law of the place of incorporation to determine fundamental issues of corporate structure.") (citing *Quickick, Inc. v. Quickick Int'l*, 304 So. 2d 402, 406 (La. Ct. App. 1974) (applying law of state of incorporation to a question of alter ego liability)).

The Florida Supreme Court has imposed a strict standard upon those wishing to pierce a corporate veil.  Generally, the rule is that the corporate veil will not be pierced absent a showing (1) that the corporation is a "mere instrumentality" or alter ego of the defendant; and (2) that the defendant engaged in "improper conduct" in the formation or use of the corporation.  *Patin*, 294 F.3d at 647 (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120-21 (Fla. 1984)).  "In defining what constitutes 'improper conduct,' the Florida Supreme Court explained that the corporate veil 'will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them.'"  *Id.* (quoting *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1120).  In *Patin*, The Fifth Circuit looked to Florida's intermediate courts for guidance on the meaning of "improper conduct."  The Court observed:

> Since *Dania Jai-Alai,* intermediate Florida appellate courts
> and federal courts applying Florida law have elaborated
> further on the meaning of "improper conduct." In *Steinhardt
> v. Banks,* 511 So. 2d 336, 339 (Fla. Dist. Ct. App. 1987),
> the Florida District Court of Appeal for the Fourth District
> offered a "workable formula for applying the reference to
> 'improper conduct.' " The court stated:

21

Florida decisions uniformly hold that courts will look
through the screen of a corporate entity to the
individuals who compose it in cases in which the
corporation was a mere device or sham to accomplish
some ulterior purpose, ... or where the purpose is to
evade some statute or to accomplish some fraud or
illegal purpose, or where the corporation was employed
by the stockholders for fraudulent or misleading
purposes, was organized or used to mislead creditors or
to perpetrate a fraud upon them, or to evade existing
personal liability.

*Id.* (quoting *Tiernan v. Sheldon,* 191 So. 2d 87, 89 (Fla.
Dist. Ct. App. 1966) (internal quotations omitted)). This
formulation has been cited with approval by other Florida
courts and federal courts applying Florida law. *See, e.g.,
In re Warmus,* 276 B.R. 688, 697 (S.D. Fla. 2002); *In re
Hillsborough Holdings Corp.,* 166 B.R. 461, 469 (Bankr. M.D.
Fla. 1994); *Acquisition Corp. of Am. v. Am. Cast Iron Pipe
Co.,* 543 So. 2d 878, 882 (Fla. Dist. Ct. App. 1989).

*Patin*, 294 F.3d at 647-48. Further, as the Middle District of

Florida has noted,

[s]ome Florida District Courts of Appeal have incorporated
causation and damages into the standard for piercing the
corporate veil, although the Supreme Court of Florida has
not yet done so. *Gasparini v. Pordomingo,* 972 So. 2d 1053,
1055 (Fla. 3d DCA 2008); *Seminole Boatyard, Inc. v.
Christoph,* 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (citing
*Hillsborough Holdings,* 166 B.R. at 468-69); *see also U-Haul
Intern., Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1043 (9th
Cir. 1986) (reasoning that the alter ego theory under *Sykes*
requires fraudulent or misleading conduct to be directed at
the plaintiff); *Solomon v. Betras Plastics, Inc.,* 550 So. 2d
1182, 1184-85 (Fla. 5th DCA 1989) (Cobb, J., dissenting)
("[T]he demonstrated improper conduct must be the proximate
cause of the alleged loss."). Notably, no Florida District
Court of Appeals has rejected the incorporation of causation
and damages into the standard for piercing the corporate
veil.

*N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 6:07-CV-

1503-ORL19KR, 2009 WL 2982834, at *4-5 (M.D. Fla. Sept. 11,

2009).  *See also Seminole Boatyard, Inc.*, 715 So. 2d at 990
(requiring proof by a preponderance of the evidence that the
fraudulent or improper use of the corporate form caused injury to
the claimant).  The Court in *N. Am. Clearing, Inc.* predicted that
the Florida Supreme Court would require evidence that the
improper use of the corporate form caused harm to the plaintiff
in order to pierce the corporate veil.  2009 WL 2982834, at *5.
Likewise, the Eleventh Circuit has adopted the causation
requirement from Florida's intermediate courts.  *See, e.g.,*
*Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349
(11th Cir. 2011); *Eckhardt v. U.S.*, 463 F. App'x 852, 856 (11th
Cir. 2012).

Plaintiffs fail to state a claim that Ducky Johnson is the
alter ego of Johnson.  They do not allege that Johnson organized
or employed Ducky Johnson to mislead or to work a fraud upon
anyone.  Nor do they claim that any of the alleged improper
conduct caused injury to them, such as by rendering Ducky Johnson
unable to satisfy any debts for which it may be liable.[39]  The

---

[39]  While plaintiffs speculate as to whether Gulf Coast has
been defunded, they do not suggest that Ducky Johnson has
suffered the same fate.  Moreover, as the Court explained,
references in the proposed complaint to the "defunding" of Gulf
Coast are purely speculative and based solely on Gulf Coast's
failure to file one annual report, which cannot result in
dissolution and has nothing to do with funding or lack thereof.
Notably, the references to defunding are not framed as actual
allegations in the proposed complaint.  *See* R. Doc. 21-2 at 3,
17.

absence of such allegations against Ducky Johnson is fatal to plaintiffs' claim under Florida law.

As for Gulf Coast, which is governed by Louisiana law, plaintiffs do not allege fraud or deceit and therefore would need to present other evidence strong enough to "clearly indicate that the corporation and shareholder operated as one." *Lopez*, 631 So. 2d at 685-86. Although plaintiffs allege that Gulf Coast and Ducky Johnson intermingled funds *with one another*, they do not allege that either entity intermingled funds or shared bank accounts with Johnson himself. *Cf. Hollowell*, 217 F.3d at 385-86 (considering whether there is commingling of corporate *and shareholder* funds in evaluating whether to hold shareholders liable). The complaint states that a member of Johnson's family "may" have used one of the corporate accounts for personal reasons. These speculative allegations, if true, would not amount to a clear indication that Gulf Coast and Johnson acted as one, especially considering that the other factors the Court must consider are absent. As discussed above, the remaining factors are: (1) failure to follow statutory formalities for incorporating and transacting corporate affairs; (2) undercapitalization; (3) failure to provide separate bank accounts and bookkeeping records; and (4) failure to hold regular shareholder and director meetings. *Hollowell*, 217 F.3d at 385-86. Other than a vague assertion that Gulf Coast and Ducky Johnson "otherwise ignored corporate formalities," the proposed

complaint is devoid of allegations relevant to this analysis. *Cf. Iqbal*, 556 U.S. at 678 (holding that complaint must go beyond "formulaic recitations of the elements of a cause of action"). Plaintiffs' proposed amendment is futile, because without more concrete allegations, it could not withstand a motion to dismiss.


**IV. CONCLUSION**

For the foregoing reasons, plaintiffs' motion to amend the complaint is GRANTED in part and DENIED in part. Plaintiffs may add Jamie Hewitt, William Nethery, C&C Concrete and Masonry, LLC, C and C Concrete and Masonry Rental, LLC, and Nethery Foundation Services, LLC. Plaintiffs may add Charles Johnson as a defendant to the existing counts based on his alleged joint employer status. They may also include the claim that Johnson is individually liable for any violations that may have occurred while he was acting as a sole proprietor under the trade names of Gulf Coast Lift and/or Ducky Johnson. They may not claim that Johnson is liable for Gulf Coast's debts on the basis of its possible dissolution or lack of funds, and they may not include a claim urging the Court to pierce the corporate veil based on the supposed status of Gulf Coast and Ducky Johnson as Johnson's alter egos.

It is further ordered that a scheduling conference will be held by telephone on **Thursday, March 27, 2014, at 11:00 a.m.** for

the purpose of scheduling new pre-trial conference and trial dates.  The Court will initiate the telephone conference call and will be represented at the conference by its Case Manager.

New Orleans, Louisiana, this <u>11th</u> day of March, 2014.

_____

**SARAH S. VANCE**
**UNITED STATES DISTRICT JUDGE**